**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| DANSON NJOROGE MUIGA,<br><br>Petitioner,<br><br>v.<br><br>THOMAS GILES et al.,<br><br>Respondents. | Case No. 2:26-cv-09176-DFM<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

On August 18, 2026, Petitioner Danson Njoroge Muiga ("Petitioner"), proceeding through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). Respondents filed an Answer. See Dkt. 8 ("Answer"). Petitioner replied. See Dkt. 9 ("Reply"). On the Court's order, the parties jointly filed a supplemental brief. See Dkt. 11 ("Supp. Br."). The Court held a hearing on September 8, 2026. See Dkt. 13.

For the reasons set forth below, the Petition is **GRANTED** in part.

## II. BACKGROUND

Petitioner is a native and citizen of Kenya. See Petition ¶ 29; Dkt. 8-6, Declaration of Cane Langill ("Langill Decl.") ¶ 4. Petitioner entered the United States in 2004 as a nonimmigrant student. See Langill Decl. ¶ 6. Petitioner sought adjustment of status and made other immigration requests in

2008 and between 2012-2017; Petitioner's applications were rejected or denied. See id. ¶¶ 7-8. Petitioner was served with a Notice to Appear on April 12, 2010. See id. ¶ 9. Petitioner applied for asylum on May 1, 2019. Id. ¶ 11.

On November 15, 2021, an Immigration Judge ("IJ") denied Petitioner's application for asylum, ordered Petitioner removed to Kenya, granted Petitioner's application for withholding of removal under the Immigration and Nationality Act ("INA"), and held Petitioner's application for protection under the Convention Against Torture ("CAT") in abeyance because of the grant of withholding. See id. ¶ 12; Petition ¶ 30; Answer, Ex. A. Petitioner does not dispute the finality of his removal order. See Petition ¶¶ 11, 35.

Following the IJ's November 2021 decision, the Department of Homeland Security ("DHS") did not effectuate Petitioner's removal. See id. ¶ 2. On June 28, 2023, Petitioner was issued an Order of Supervision ("OSUP"); he has lived in the United States since, with employment authorization and subject to reporting requirements. See id. ¶¶ 2, 45; Reply at 1, 4; Langill Decl. ¶ 13.

On August 6, 2026, U.S. Immigration and Customs Enforcement ("ICE") was notified that Petitioner had been scheduled for removal on August 19. See Langill Decl. ¶ 14. On August 11, 2026, ICE took Petitioner into custody during a requested check-in. See Petition ¶ 3; Langill Decl. ¶ 15. On the date of his re-detention, ICE issued Petitioner: (1) a Notice of Revocation of Release, indicating that Petitioner's OSUP was being revoked under 8 C.F.R. § 241.13(i); (2) a Notice of Imminent Removal Pursuant to 8 C.F.R. § 241.4(g)(4), informing Petitioner that ICE possessed a travel document to affect Petitioner's removal and expected this to occur in August 2026; and (3) a Notice of Removal informing Petitioner that ICE intended to remove him to Cameroon. See Answer, Exs. B-D. The record indicates that on the date of his re-detention, Petitioner was provided an informal interview

upon the revocation of his OSUP, at which he expressed his belief that the conditions in Kenya had changed so he would be "okay to go back to Kenya" and stated that he "can obtain my travel documents with the Kenya embassy in Los Angeles, CA and leave on my own recognizance." Id., Ex. E; see also Langill Decl. ¶ 16 (noting that although Petitioner stated he is willing to go to Kenya the IJ order withholds his removal to Kenya).

On August 18, 2026, at 8:22 a.m., ICE flew Petitioner to Louisiana on a commercial flight, with removal to Cameroon scheduled for the next day. See Answer at 2; Langill Decl. ¶ 18; Reply at 8-10. Minutes later, the Petition was filed in this Court; the Notice of General Order (Dkt. 5) was served on Respondents' counsel at 8:53 a.m. See Answer at 2; Langill Decl. ¶ 18. Petitioner was transported back to Adelanto where he remains detained. See Supp. Br. at 1.

Petitioner challenges both the legality of his present detention and any effort to facilitate his removal to a third country without a meaningful opportunity to assert a third country-specific claim for fear-based protection. See Petition ¶¶ 55-84. The Petition argues that: (1) Petitioner's detention is unlawful and subject to review under 28 U.S.C. § 2241; (2) Petitioner's detention violates his right to substantive and procedural due process under the Fifth Amendment; (3) Petitioner's threatened removal to a third country violates the Fifth Amendment, the CAT, and implementing law; and (4) Petitioner's detention violates the Administrative Procedure Act, 5 U.S.C. § 706(2). See id. Petitioner seeks declaratory relief, conditional release from custody, and injunctive relief regarding third country removal. See id. at 13-14; Reply at 11.

Respondents argue that the Court's jurisdiction is cabined by 8 U.S.C. § 1252, Petitioner's detention was necessary to effectuate proximate third country removal, there is a significant likelihood of Petitioner's removal in the

reasonably foreseeable future, and third country removals are lawful. See Answer at 1-5. Respondents acknowledge that noncitizens must be given a meaningful opportunity to raise any fear-based claim for protection before third country removal; if a noncitizen expresses such a fear, they are referred to U.S. Citizenship and Immigration Services ("USCIS") for appropriate screening. See id. at 4-5; Supp. Br. at 2. Respondents state that Petitioner has not requested USCIS screening. See Answer at 5; Supp. Br. at 3. Respondents also state ICE's position that Petitioner "did not need to be served with a third-country removal letter due to the diplomatic assurances in place" with Cameroon. Answer at 2 (quoting Langill Decl. ¶ 17).

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the constitutionality of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001); Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012) (en banc).

### A. Legal Framework

A noncitizen ordered removed must be removed "from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during this ninety-day "removal period." Id. § 1231(a)(2)(A). If removal is not effectuated during the removal period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). Certain categories of noncitizens may be detained beyond the removal period, as delineated in § 1231(a)(6), so long as their detention comports with principles of due process. See Zadvydas, 533 U.S. at 689, 701 (holding that due process requires reading in an "implicit limitation" on the

duration of detention under § 1231(a)(6) and adopting a "presumptively reasonable period of detention" of up to six months).

Once a noncitizen is released under § 1231(a)(3), their release may be revoked in accordance with federal regulations. First, an individual subject to an OSUP "who violates any of the conditions of release may be returned to custody." 8 C.F.R. §§ 241.13(i)(1), 241.4(l)(1). Second, the government may "revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release where (i) the purposes of release have been served; (ii) the noncitizen violates a condition of release; (iii) it is appropriate to enforce a removal order or commence removal proceedings; or (iv) the noncitizen's conduct or any other circumstances indicates that release would no longer be appropriate. See id. § 241.4(l)(2).

When revoking an OSUP, ICE must notify the noncitizen "of the reasons for revocation of his or her release" and "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Id. §§ 241.13(i)(3), 241.4(l). If the noncitizen is not released after the informal interview, their continued detention will be subject to a review process "which will ordinarily be expected to occur within approximately three months after release is revoked," followed thereafter by periodic reviews as necessary. Id. § 241.4(l)(3).

With regard to third country removal, the INA provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that

country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

## B. The Court Has Jurisdiction Over Petitioner's Claims

Respondents suggest that 8 U.S.C. §§ 1252(b)(9), (g) limit the Court's jurisdiction over the Petition. See Answer at 3. The Court disagrees.

Section 1252(g) bars review of the Attorney General's "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders," and the Supreme Court has construed it narrowly to reach only those three discrete actions. See Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025) ("The Supreme Court has given a 'narrow reading' to § 1252(g)"). The Ninth Circuit has explicitly rejected the application of § 1252(g) to purely legal arguments challenging third country removal without the requisite process. See Ibarra-Perez, 154 F.4th at 995-99. Though the Court generally agrees with Respondents that habeas petitions "are not to be used for opposing or delaying an imminent lawful removal," see Answer at 3 (emphasis added), the operative word is "lawful."

Nor does § 1252(b)(9) strip the Court of jurisdiction. That section makes a petition for review the exclusive means of reviewing a removal order and channel into that review "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien." See 8 U.S.C. 1252(b)(9). Section 1252(b)(9) does not bar district court review of Petitioner's claims; the Supreme Court has rejected such an "extreme" and "expansive" interpretation of the provision. See Jennings v. Rodriguez, 583 U.S. 281, 292-95 (2018).

## C. The Record Indicates That Respondents Have Not Complied with the Procedural Protections Regarding Third Country Removal

As stated, the Government may revoke a noncitizen's OSUP and re-detain them under certain circumstances and with certain procedures. Here, when ICE revoked Petitioner's OSUP, ICE served him with a Notice of Revocation of Release, citing 8 C.F.R. § 241.13(i) and changed circumstances "such that there is a significant likelihood of removal in the reasonably foreseeable future. ICE has obtained a travel document and scheduled [Petitioner's] removal to take place no later than: 08/31/2026." Answer, Ex. B. That same day, ICE provided Petitioner with an informal interview and a Notice of Removal to Cameroon. See id., Exs. D-E. Approximately one week later, ICE transported Petitioner across the country for removal to Cameroon. See Langill Decl. ¶¶ 15, 18. On this record and considering Petitioner's claims as pleaded, the Court cannot say that Petitioner's removal is not reasonably foreseeable or that he was denied the OSUP revocation procedures such that he is entitled to immediate release.

However, while the Government has authority to remove Petitioner and re-detain him to effectuate removal, this does not mean that the Government may remove Petitioner to a country not identified in the IJ's removal order absent certain procedural protections.

When a noncitizen is ordered removed from the United States, an IJ must assign a country of removal. See Hadera v. Gonzales, 494 F.3d 1154, 1156 (9th Cir. 2007). "Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the [INA], 8 U.S.C. § 1231(b), and the Due Process Clause." Quach v. Mullin, No. 26-3843, 2026 WL 2126433, at *4 (C.D. Cal. July 21, 2026); see also Kumar v. Wamsley, 817 F. Supp. 3d 1059, 1065 (W.D. Wash. Nov. 17, 2025). "[T]hird-country

removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings." Garcia v. Janecka, No. 26-2519, 2026 WL 1465140, at *5 (C.D. Cal. May 22, 2026) (citation omitted); Kumar, 817 F. Supp. 3d at 1065. As stated, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." Kumar, 817 F. Supp. 3d at 1065 (quoting 8 U.S.C. § 1231(b)(3)(A)). The government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a third country. See Garcia, 2026 WL 1465140, at *5; Quach, 2026 WL 2126433, at *4; Ramos v. Noem, No. 26-0064, 2026 WL 303536, at *6 (C.D. Cal. Feb. 4, 2026); Aden v. Nielsen, 409 F. Supp. 3d 998, 1018-19 (W.D. Wash. 2019); see also Najjar v. Lynch, 630 F. App'x 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country."). "Failing to notify individuals who are subject to deportation that they have the right . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Garcia, 2026 WL 1465140, at *5 (quoting Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999)).

Here, Respondents re-detained Petitioner for the purpose of removing him to Cameroon, a country that was not identified in the IJ's removal order. See Answer, Ex. A. The IJ ordered Petitioner removed to Kenya, but granted withholding of removal; the IJ did not designate or identify an alternative country in the removal order. See id. Petitioner challenges the government's ability to remove him to a third country without meaningful advance written notice identifying the intended country of removal and a meaningful

opportunity to raise and obtain adjudication of any fear-based claim concerning that country.

Respondents do not contest that noncitizens must be given a meaningful opportunity to raise any fear-based claim before they can be removed to a third country. See Answer at 4; Supp. Br. at 2. Respondents argue that third country removals are permissible and authorized by statute, and claim that Petitioner must avail himself of the opportunity for USCIS screening. See Answer at 4-5; Supp. Br. at 3. Respondents also repeat ICE's position "that Petitioner 'did not need to be served with a third-country removal letter due to the diplomatic assurances in place' with Cameroon." Answer at 2 (citing Langill Decl. ¶ 17).

The record reflects that on the day Petitioner was re-detained, Respondents provided him a Notice of Removal that stated, in its entirety: "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Cameroon." Answer, Ex. D. That same day, Petitioner was afforded an informal interview, presumably to comply with the procedural requirements outlined in the regulations regarding OSUP revocation. See 8 C.F.R. § 241.13(i)(3). Respondents contend that Petitioner "must simply avail himself" of the USCIS screening procedures "directly with the agency," Answer at 4-5; Supp. Br. at 3. Petitioner's counsel persuasively highlights how Respondents suggest that Petitioner may request USCIS screening only after ICE already transported him across the country for removal. See Reply at 2.

The Court finds that the process provided here was not sufficient to comply with the INA or the Due Process Clause. Merely providing Petitioner a notice of intent to remove him to Cameroon and conducting an informal interview with an ICE officer the same day without the benefit of counsel or time to prepare does not comply with the requirements to provide Petitioner meaningful notice and opportunity to be heard on whether he will be subject to

persecution or harm in Cameroon. Indeed, there is no evidence that Respondents ever advised Petitioner of his right to assert a fear-based claim. Absent these protections, any attempt to effectuate Petitioner's removal to Cameroon runs afoul of due process. See Garcia, 2026 WL 1465140, at *5; Andriasian, 180 F.3d at 1041.

As such, the Court grants the Petition in part and enjoins Respondents from removing Petitioner to any third country without first providing him and his counsel with notice and a meaningful opportunity to respond in compliance with the applicable statutory law and due process. See Corea-Salgado v. Warden, No. 26-4218, 2026 WL 2276866, at *4 (C.D. Cal. Aug. 6, 2026) (ordering the same); Quiroz-Lara v. Blanche, No. 26-3917, 2026 WL 2178763, at *4 (C.D. Cal. July 27, 2026) ("Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal."). "To comply with due process, this opportunity must include a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of [Petitioner's] particular claim." Velasquez Jimenez v. Mullin, No. 26-356, 2026 WL 1455385, at *9 (C.D. Cal. May 18, 2026) (internal quotation marks and citation omitted); see also Bedrosian v. Noem, No. 25-2814, 2026 WL 2138135, at *6 (C.D. Cal. May 20, 2026) (enjoining respondents from attempting or effectuating petitioner's removal unless provided with notice followed by a meaningful opportunity of at least ten days following notice to raise a fear-based claim before an IJ or any other applicable legal claim).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Petition is **GRANTED** in part and Judgment shall be entered accordingly as follows:

1. Respondents are enjoined from removing Petitioner Danson Njoroge Muiga to Cameroon or any other third country unless and until

Respondents have provided Petitioner notice and a meaningful opportunity to present a claim of fear of persecution or harm upon removal to Cameroon (or any other designated third country) or any other applicable legal claim at a hearing before an Immigration Judge before such removal, with at least five (5) business days' written notice of such hearing provided in advance to Petitioner and his counsel.

2. If no such proceeding as set forth in paragraph (1), above, is provided within thirty (30) days from the date of this Order, Respondents shall release Petitioner from custody subject to his preexisting Order of Supervision.

3. Nothing herein shall prevent Respondents from providing such a hearing at a later date and reinstituting the removal process after Petitioner's release, if all required process is provided to Petitioner.

4. The Petition is denied without prejudice in all other respects.

Date: September 21, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge